Frank MICARI, Jr., Plaintiff,

v.

TRANS WORLD AIRLINES, INC., Defendant.

No. 96–CV–4695 (ILG).

United States District Court, E.D. New York.

April 26, 1999.

Richard L. Steer, Jones Hirsch Connors & Bull P.C., New York City, NY, for Trans World Airlines, Inc.

Jeffrey K. Brown, Leeds & Morelli, Carle Place, New York, for Frank Micari.

## MEMORANDUM & ORDER

GLASSER, District Judge.

### BACKGROUND

Defendant Trans World Airlines, Inc. ("TWA") operates a commercial airline. Plaintiff Frank Micari, Jr. ("Micari") began working for TWA at John F. Kennedy International Airport as an airplane mechanic in July of 1988. The duties of mechanic, which are more fully defined by the applicable collective bargaining agreement between TWA and Micari's union, are comprised of activities such as dismantling, overhauling, repairing, fabricating, assembling, welding and erecting all parts of airplanes, airplane engines and related machinery. Micari's duties included primarily the maintenance and repair of equipment and tools used for loading aircraft.

On April 30, 1992, Micari alleges that he injured his neck and back while at work when he pushed open a large fire door that separated two rooms. Based on that accident, he filed a Workers' Compensation claim and received benefits. Micari also took a medical leave of absence from TWA that lasted approximately 20 months.

In April of 1993, Micari filed a claim for Social Security Disability benefits. In con-

nection with that claim, Micari represented to the Social Security Administration ("SSA") that he was disabled and unable to perform the duties of his previous position with TWA as of April 30, 1992. Specifically, Micari stated in a "Disability Report" submitted to the SSA that "I'm unable to do my job at this time. I cannot lift, put my hands over my head, pull, push, bend or stand for any length of time. If I do I end up in very bad pain." However, in that same report, the plaintiff did state that he was able to do "light duty work only." Micari's initial claim for disability benefits was denied by the SSA.

In December of 1993, Micari returned to work at TWA. In May of 1994, Micari alleges that he again injured himself while working. This time the injuries were to his neck, back, arms and legs. After either May 4th or May 12th of 1994—the exact date is disputed by the parties—Micari failed to report for work; he subsequently filed a Worker's Compensation claim. Pursuant to TWA's policies, which are identified in its Management Policy & Procedure Manual, TWA requested that Micari submit documentation of his condition to verify that he had sustained a serious injury and that he was eligible for a medical leave of absence. The parties continue to dispute whether Micari provided all of the supporting medical documentation requested by TWA.

On July 1, 1994, TWA supervisory personnel William Glynn and Kevin Lyons met with Micari and union shop steward Perry Esposito concerning Micari's alleged failure to provide the requested documentation. Both parties agree that Micari did submit some documents that attested to his medical condition and that, by letter dated July 20, 1994, TWA notified Micari that the documentation he submitted did not substantiate any disability that would preclude him from performing the duties of a mechanic. The July 20, 1994 letter also states that, for Micari's absence to be approved, complete updated medical records needed to be submitted. Again, the

parties dispute whether Micari furnished the requested information in response to this letter.

On August 1, 1994, TWA wrote Micari and advised him that, due to his unauthorized absences from work beginning May 13, 1994, he was in violation of Article 17(k) of the collective bargaining agreement. That Article provides that employees must be truthful in their dealings with TWA and must avoid unnecessary absences and other abuses of sick leave privileges. The letter also informed Micari that a discharge hearing had been scheduled for August 5, 1994.

On August 9, 1994, a discharge hearing was held. Micari was present along with representatives from his union. At the meeting, the plaintiff was charged with unauthorized absences from work. In a letter dated that same day, the hearing officer, M.C. Sickles, stated that Micari would be discharged if, within seven working days from receipt of the letter, he did not provide complete updated medical records to substantiate his disability. Again, the parties dispute whether Micari provided the requested materials in response to this letter. On August 23, 1994, TWA notified Micari in writing that his employment was being terminated effective that date because of his failure to supply proper verification of his claimed basis for a medical leave.

Subsequent to his termination by TWA, Micari pursued an appeal of SSA's denial of his first disability claim. On June 24, 1994, Micari represented to the SSA that he returned to work during 1994, but "was unable to perform my job duties." In a subsequent submission to the SSA of a form captioned "Claimant's Recent Medical Treatment," he stated that he had been told by doctors to "Avoid exertion; no work."

An administrative law judge with the SSA conducted a hearing on November 16, 1994 and issued a decision on January 23, 1995, holding that Micari was disabled

since May 13, 1994, within the meaning of the Social Security Act. Specifically, the judge found that Micari "was exertionally precluded from performing his past relevant work as well as any alternative substantial gainful activity existing in significant numbers in the national economy." ALJ Opp'n at 4. Micari has been receiving disability payments from the SSA since the ALJ's decision was rendered. He has also been receiving workers' compensation benefits from TWA's workers' compensation carrier. Micari has filed a union grievance, which is presently pending, concerning his discharge.

Micari's Complaint claims entitlement to relief, under the Americans with Disabilities Act ("ADA") and the New York Human Rights Law ("NYHRL") Section 290 et seq., respectively. Both claims are predicated on two separate acts of TWA. First, Micari alleges that TWA discriminated against him when it failed to accommodate his request for "light duty" work. Second, he alleges that the defendant discriminated against him by terminating him based on his disability. The defendant contends that the undisputed facts establish that none of the plaintiff's claims can succeed as a matter of law and, accordingly, now moves for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proof on such motion. See United States v. All Funds, 832 F.Supp. 542, 550–51 (E.D.N.Y.1993).

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the nonmovant who must demonstrate that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a jury could return a verdict in its favor. Id. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324, 106 S.Ct. 2548. Once the nonmovant has adduced evidence of a genuine issue of material fact, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." Samuels v. Mockry, 77 F.3d 34, 36 (2d Cir.1996).

In employment discrimination cases, courts are particularly cautious about granting summary judgment where intent is at issue. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997). However, even in these cases a "plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Id.

### II. Employment Discrimination

This Court first addresses Micari's claim that he was discriminated against when TWA fired him, allegedly because of his disability. In a series of decisions, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and St. Mary's Hon-

or Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court set forth the allocation of burdens and orders of presentation in a Title VII case. Courts in this Circuit have applied the burden-shifting analysis set forth in those cases to cases brought for discrimination under the ADA. See, e.g., Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir.1998) (applying McDonnell Douglas analysis to ADA case); Wallengren v. French, 1999 WL 65048, at *3 (S.D.N.Y. 1999) (same). First, "the plaintiff has the burden of proving by a preponderance of evidence a prima facie case of discrimination." Burdine, 450 U.S. at 252–53, 101 S.Ct. 1089. Second, "if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse employment decision]." Id. at 253, 101 S.Ct. 1089. Third, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

■ In order to establish a prima facie case of discrimination under the ADA or NYHRL, Micari must prove: (1) his employer is subject to the ADA; (2) that he is disabled within the meaning of the ADA and NYHRL; (3) that he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) that he suffered an adverse employment action because of his disability. Wernick v. Federal Reserve Bank, 91 F.3d 379, 383 (2d Cir.1996); Zuppardo v. Suffolk County Vanderbuilt Museum, 19 F.Supp.2d 52, 54 (E.D.N.Y.1998). TWA argues that Micari is unable to prove his prima facie case because he cannot show that he is a qualified individual with a disability under the ADA or that he has a disability that qualifies him for protection under the NYHRL. Def. Mem at 2.

A. *Judicial Estoppel*

TWA contends that judicial estoppel prevents Micari from arguing that he is qualified for the position of mechanic. Specifically, the defendant argues that "where, as here, a plaintiff claiming disability discrimination has repeatedly represented to the SSA that he is unable to be gainfully employed in any capacity, and has thereby obtained a determination by SSA that he is entitled to receive Social Security Disability benefits, he is judicially estopped from establishing the requisite element that he is able to perform the essential functions of his job." Def. Mem at 15. In Simon v. Safelite Glass Corp., 128 F.3d 68, 74 (2d Cir.1997), the Second Circuit explicitly reserved the question of whether judicial estoppel can have such a preclusive effect in an ADA case and this district has previously noted that "the rapidly growing weight of authority rejects" that argument. Meling v. St. Francis College, 3 F.Supp.2d 267, 274 n. 6 (E.D.N.Y. 1998) (citing Griffith v. Wal–Mart Stores, Inc., 135 F.3d 376, 381 (6th Cir.1998); Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214, 1220 (11th Cir.1997); Swanks v. Washington Metro. Area Transit Auth., 116 F.3d 582, 586 (D.C.Cir. 1997)). Recent decisions in other Circuits have concluded that, because of the differences in the definitions of disability between the ADA and other statutes under which disability benefits are granted, judicial estoppel is inappropriate in ADA cases where, as here, reasonable accommodation of the plaintiff's disability is at issue. See, e.g., Swanks, 116 F.3d 582 (D.C.Cir.1997) ("a finding of disability under the Social Security Act gives no consideration of a claimant's ability to work with reasonable accommodation, which is required to be considered under the ADA.").

However, giving due recognition to the essential rationale for the principle of judicial estoppel, namely, that a party should not be permitted to take a position inconsistent with one successfully and categorically pressed in another proceeding be-

cause the integrity of the judicial process demands it, I would assert the applicability of the principle to an ADA case. In applying for Social Security Disability benefits, the applicant declares under oath, as he did here, that he is "unable to perform my job duties" and was told by his doctors to "avoid exertion; no work." Those sworn declarations are unequivocal. They do not say that "I am unable to perform my job duties without accommodation" or that "I can perform my job duties with accommodation." "No work" requires no explanation. Those unconditional declarations were successful in obtaining the benefits for which he applied. It is important to note that in finding that he was disabled under the Social Security Act, a determination was made that he was suffering from "a physical impairment or impairments of such severity that *he is not only unable to do his previous work but cannot*, considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists in the national economy ....*" 42 U.S.C. § 423(d)(2)(A) (emphasis mine).

The plain meaning of those words, it seems to me, is that he cannot work, with or without accommodation and having sworn to a disability which supported that finding, he should be estopped to take a contrary position here because to permit him to do so would, indeed, be to abuse "the judicial process through cynical gamesmanship." *Teledyne Industries, Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir.1990). The point was made most succinctly by Judge Posner in *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir.1993), in these words: "By making them choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying." *See also Simon v. Safelite Glass Corp.*, 943 F.Supp. 261 (E.D.N.Y.1996), aff'd, 128 F.3d 68 (2d Cir. 1997).

■ In any event, at the very least I would adopt the persuasive view of the Seventh Circuit in *Weigel v. Target Stores*, 122 F.3d 461 (7th Cir.1997), in which the court wrote that an employer should be entitled to take an employee's representation of total disability at his word and "such representations are relevant evidence of the extent of plaintiff's disability, upon which an employer may rely in attempting to establish that an ADA plaintiff is not a 'qualified individual with a disability.' ... When a defendant in an ADA action relies on such representations as the basis for contending that a plaintiff is not 'a qualified individual,' the plaintiff is free to come forward with additional evidence that shows she could perform the essential duties of a desired position with or without reasonable accommodation notwithstanding the fact that she might have been deemed disabled under some other statutory or contractual framework. As a general matter ... absent some affirmative showing ... the employer will be entitled to judgment as a matter of law." *Id.* at 467–68 (footnote omitted). There has been no such affirmative showing by Micari and TWA is, for this reason, entitled to judgement as a matter of law.

This Court's decision, however, does not depend on whether judicial estoppel is applicable on the facts of this case because, even after consideration of Micari's arguments on the merits, this Court is compelled to award summary judgment to the defendant.

### B. *Micari Cannot Perform the Essential Functions of the Job*

■ TWA argues that at the time it terminated Micari in August of 1994, he was unable perform the essential functions of his job and, therefore, he was not a qualified individual with a disability under the law. Def. Mem at 20. In order for a plaintiff to make out a *prima facie* case of discrimination under the ADA, he must show that he can perform the essential functions of the job in spite of the handicap either (a) with no need for accommodation, or (b) with a reasonable accommodation. *Gilbert v. Frank*, 949 F.2d 637, 642 (2d

Cir.1991). Although "reasonable accommodation" may include modifications to the work schedules and alterations of the assignments and/or physical equipment, "'reasonable accommodation' does not mean elimination of any of the job's essential functions." *Id.; see also Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 137–38 (2d Cir.1995) (citing *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)).

■ In this case, Micari, by his own admissions, *see* Steer Aff.Exs. "D", "E", "F" at 5–6; Micari, Oct. 19, 1998 Dep. at 19–22, could not perform the essential functions of an airline mechanic either with or without a reasonable accommodation and, as such, he was not "otherwise qualified" under the ADA. Therefore, he cannot make out a *prima facie* case of discrimination under that statute and summary judgment must be awarded to the defendant.

This Court also notes that Micari's failure to report for work after May 12, 1994 provides an additional basis on which this Court can conclude that he was unable to perform the essential functions of his job. It is not surprising that attendance has been found to be a prerequisite to performing the essential functions of a job. *See, e.g., Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir.1999) (citing *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442 (8th Cir.1998); *Rogers v. International Marine Terminals Inc.*, 87 F.3d 755 (5th Cir.1996); *Tyndall v. National Educ. Ctrs.*, 31 F.3d 209 (4th Cir.1994)); *Aquinas v. Federal Express Corp.*, 940 F.Supp. 73, 78 (S.D.N.Y.1996). The undisputed facts are that Micari was on a medical leave of absence from April 1992 through December 1993 and that he stopped coming to work sometime in May 1994. Therefore, from April 1992 through his termination on August 23, 1994, he worked approximately 5 months out of a possible 28. Neither the ADA nor the NYHRL requires an employer to tolerate absences of this magnitude.

Although it is true that medical leaves of absence can be an appropriate form of accommodation contemplated by the ADA, *see, e.g., Powers v. Polygram Holding, Inc.*, 40 F.Supp.2d 195, 198 (S.D.N.Y.1999), the cases which so hold have done so on facts where the leaves were of much shorter duration than the one taken by Micari. For example, in *Powers*, the court found that a seventeen-week leave of absence was not too long to render an individual legally unqualified for his job. *Id.; see also Criado v. IBM Corp.*, 145 F.3d 437 (1st Cir.1998) (finding no error in denial of motion for judgment as a matter of law on the issue of whether a one month disability leave followed by a request for a leave of unspecified duration rendered the employee unqualified for her position); *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775 (6th Cir.1998) (finding a genuine issue of fact as to whether an eight-week leave of absence followed by a request for an additional one-month leave was a reasonable accommodation under the ADA); *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324 (10th Cir. 1998) (finding a reasonable accommodation where employee requested a leave of absence after having been granted and taken three separate leaves of absence, each for thirty days). Where the medical leaves of absence stretch beyond a year, as here, courts have found that the employee, as a matter of law, cannot perform the essential functions of his position. *See Corder v. Lucent Technologies Inc.*, 162 F.3d 924 (7th Cir.1998) (plaintiff had already received forty-three weeks leave in 1991, nineteen weeks in 1992, and nine weeks in 1993 before her termination); *Nowak v. St. Rita High School*, 142 F.3d 999 (7th Cir.1998) (plaintiff missed approximately 18 months of work before being terminated); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222 (11th Cir.1997) (plaintiff had received approximately ten months of leave prior to termination); *Rogers*, 87 F.3d 755 (requested accommodation would have been an approximate one-year leave of absence).

The authority cited above, as well as common sense, teaches that "there are limits to how far an employer must go in granting medical leave." *Waggoner*, 169 F.3d at 483. In this case, when TWA fired Micari, he had been absent 23 of the previous 28 months. That fact provides an additional reason which compels this Court to conclude that, as a matter of law, Micari was unable to perform the essential functions of his job and, accordingly, was not "otherwise qualified" under the ADA.

### III. *Nondiscriminatory Basis for Discharge*

TWA argues that even assuming Micari can make a *prima facie* showing of discriminatory discharge, his claim nonetheless must be dismissed because he cannot rebut TWA's showing that it had a legitimate nondiscriminatory reason for discharging him. Def. Mem at 32. TWA avers that it terminated Micari because he failed to provide the required documentation to support his continued medical leave of absence. Having articulated this nondiscriminatory reason, the burden now shifts to Micari to come forth with evidence that the articulated reason was really a pretext for discrimination. *Hicks*, 509 U.S. at 509, 113 S.Ct. 2742.

Micari did not come forth with any evidence that TWA's stated reason for discharging him was a pretext for discrimination. While there is a factual dispute as to whether Micari submitted all the medical evidence that he was required to, there is no evidence that would support a finding that TWA's real reason for firing him was because of his disability. To defeat a motion for summary judgment, a plaintiff must do more than simply assert that the defendant's stated reason for firing him was false; he must also demonstrate that the termination was motivated by a discriminatory animus. *See Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir.1998). Here, although there is a factual question with regard to the stated reason TWA fired Micari, there is not a scintilla of credible evidence proffered by the plaintiff that would allow a finder of fact to conclude that TWA fired Micari because of his disability. Micari's unsupported statements that TWA did discriminate against him are not enough to defeat TWA's stated explanation for the firing. *See, e.g., Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993) (When construing facts in the summary judgment context, a plaintiff must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."); *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 674–75 (E.D.N.Y.1997) (conclusory allegations not sufficient to create genuine issue of material fact). Accordingly, summary judgment is awarded to the defendant on Micari's wrongful termination claim for this reason as well.

### IV. *Failure to Provide Reasonable Accommodation*

■ Micari claims that TWA violated both the ADA and NYHRL by failing to accommodate him, when he returned from his initial leave, by not continuing to provide him with light duty work. Def. Mem at 35. Initially, this Court finds that any failure to accommodate claim made pursuant to the NYHRL must fail because that section does not require an employer to provide a reasonable accommodation. *Hendler v. Intelecom USA, Inc.*, 963 F.Supp. 200, 211 (E.D.N.Y.1997) (Under the NYHRL, "the Court cannot find any basis in the case law or in the [NYHRL] to conclude that an employer is required to provide reasonable accommodations to employees with disabilities.").

■ Turning to the ADA claim, this Court begins by noting that an employer "is under no obligation to transfer a handicapped employee from the job for which he is employed to some other position in order to provide him work which he can perform." *Ayn v. Runyon*, 984 F.Supp. 80, 85 (D.Conn.1996) (quoting *Montgomery*

*v. Frank,* 796 F.Supp. 1062, 1069 (E.D.Mich.1992)). Nor is an employer "required to find another job for an employee." *Id.* (quoting *Henchey v. Town of North Greenbush,* 831 F.Supp. 960, 967 (N.D.N.Y.1993)). Rather, under the ADA, a plaintiff can state a claim for discrimination based upon his employer's failure to accommodate his handicap by alleging facts showing: (1) that the employer is subject to the ADA; (2) that the plaintiff is an individual with a disability within the meaning of the ADA; (3) that, with or without reasonable accommodation, the plaintiff could perform *the essential functions of his job;* and (4) that the employer had notice of the plaintiff's disability and failed to provide reasonable accommodation. *Lyons v. Legal Aid Soc.,* 68 F.3d 1512, 1515 (2d Cir.1995); *Joyce v. Suffolk County,* 911 F.Supp. 92, 94 (E.D.N.Y. 1996).

As discussed in detail above, this Court readily finds that the plaintiff was unable to perform the essential functions of his job due to his own admissions and to his chronic absence over the two year period preceding his termination. This finding precludes Micari from being able to sustain a claim for failure to accommodate because an element of his *prima facie* case is the ability to perform the essential functions of the job. *See id.*

█ In the alternative, the fact that Micari returned to work in December and, by his own admission, performed regular work for several months, drives this Court to conclude that he did not need a "reasonable accommodation" in order to work. The fact that he was reinjured performing this work is of no legal significance because, as correctly pointed out by the defendant, the remedy for this injury is a Workers' Compensation claim. *See Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F.Supp. 667, 682 (S.D.N.Y.1995) ("New York's Workers' Compensation Law provides the exclusive remedy for unintentional employment related injuries"). Micari, in fact, has availed himself of that remedy—he applied for and has been receiving Workers' Compensation since the date of this incident. Micari, Oct. 19, 1998 Dep. at 8. Accordingly, Micari's injury does not give rise to a claim for failure to accommodate under the ADA.

## *CONCLUSION*

For the foregoing reasons, summary judgment is awarded to the defendant on all of the plaintiff's claims.

**SO ORDERED.**