Arthur E. WARD, Sr., Plaintiff,

v.

WASHINGTON MILLS,
et al., Defendants.

No. 97–CV–162A.

United States District Court,
W.D. New York.

March 20, 2000.

Arthur E. Ward, Sr., Niagara Falls, NY, for Plaintiff.

Philip H. McIntyre, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for Defendants.

### ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B), on July 3, 1997. On February 10, 2000, Magistrate Judge Heckman filed a Report and Recommendation, recommending that defendants' motion for summary judgment be granted in its entirety and the case dismissed.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendants' motion for summary judgment is granted and the case dismissed in its entirety.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, to hear and report, in accordance with 28 U.S.C. § 636(b). Plaintiff brought this action for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e–17, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112–12117, and defendants moved for summary judgment. On August 27, 1999, this court issued a Report and Recommendation (Item 28) recommending that Judge Arcara grant in part and deny in part defendants' motion. Defendants filed objections, and on October 29, 1999, after reviewing the parties' submissions and hearing oral argument, Judge Arcara referred the matter back to the undersigned for additional findings.

Specifically, Judge Arcara directed the undersigned to afford defendants the opportunity to submit, in admissible form, transcripts of certain tape recordings made by plaintiff, and to reconsider defendants' motion for summary judgment in light of such evidence. Judge Arcara also directed the undersigned to "have the parties address the applicability of the Supreme Court's recent decision in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999)." Finally, Judge Arcara directed the undersigned to conduct a settlement conference.

On November 30, 1999, a conference was held with the *pro se* plaintiff and defense counsel. Plaintiff agreed to stipulate that the transcripts of the tapes are accurate and admissible as evidence for the purpose of reconsidering defendants' summary judgment motion. The court established a schedule for supplemental briefing and argument to address the impact of this evidence on the issues remaining in the case, and to address the applicability of the *Cleveland v. Policy Management Systems Corp.* decision. The court also conducted a settlement conference, and determined that the case could not be settled at that time.

On December 10, 1999, in accordance with this court's direction, defendants submitted a supplemental affidavit and memorandum of law in support of summary judgment upon reconsideration. Plaintiff has not submitted any supplemental written materials. On January 18, 2000, oral argument was heard by the undersigned. For the following reasons, defendants' summary judgment motion should be granted and the case should be dismissed.

### BACKGROUND

The factual background and procedural history of this case were set forth at length in this court's previous Report and Recommendation. Briefly stated, plaintiff worked at the Washington Mills Electro Minerals plant in Niagara Falls, New York, from September 1966 to May 1995. In December 1991, he suffered a work-related injury to his left shoulder, and underwent arthroscopic shoulder surgery in July 1992. He returned to work in November 1992, and reinjured his left arm in June 1994. He was off work until April 10, 1995, at which time he returned to work under lifting restrictions recommended by his treating physicians. On April 25, 1995, plaintiff again injured his left arm while working in the "dome lab." He returned to work that day, and tried working until May 23, 1995, but has not worked since.

On June 29, 1995, plaintiff applied for Social Security disability insurance benefits, alleging that he had not performed substantial gainful activity since his workplace injury in June 1994. On May 28, 1997, after an administrative hearing, Administrative Law Judge ("ALJ") Grenville W. Harrop, Jr. found that plaintiff was disabled within the meaning of the Social Security Act and entitled to disability insurance benefits for the period from his alleged onset date of June 1, 1994 through December 31, 1999.

Meanwhile, on October 15, 1996, plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). He alleged that when he attempted to return to work in April 1996 he was informed that there was no work available that fit within his job restrictions, but he subsequently learned that defendants recalled a retired white employee for a job which plaintiff (a black male) could have done. He claimed that he was not recalled to work because of his race, in violation of Title VII. On December 16, 1996, after a fact-finding conference, the EEOC issued a "Dismissal and Notice of Rights" letter advising plaintiff that, based on its investigation, it was unable to conclude that plaintiff had established Title VII or ADA violations. Plaintiff filed a subsequent charge with the EEOC, and one with the New York State Division of Human Rights ("NYSDHR"), containing additional allegations of discrimination by defendants. These charges were dismissed by the respective agencies at the initial level.

On March 11, 1997, plaintiff filed this action *pro se*. He alleges that, beginning in 1978 and continuing thereafter, defendants denied him equal employment opportunities, equal pay, and benefits in violation of Title VII and the ADA. He also alleges that defendants falsified his medical records and conspired with union officials to falsify information about his EEOC charges. Defendants moved for summary judgment on the following grounds:

1. The claims in the complaint should be limited to those claims that were included in the first EEOC charge.
2. Plaintiff has failed to establish *prima facie* employment discrimination.
3. Individual defendants Scavone and Campbell are not subject to liability under Title VII or the ADA.

In its previous Report and Recommendation, this court recommended that the defendants' summary judgment motion be granted to the extent that it sought to limit the complaint to the claims contained in the first EEOC charge, and to the extent that it sought dismissal of plaintiff's complaint against the individual defendants. The court recommended that the motion be denied to the extent that it sought dismissal of the complaint based on plaintiff's failure to establish a *prima facie* case of employment discrimination under either Title VII or the ADA, finding genuine factual issues as to whether plaintiff was otherwise qualified to perform the essential functions of any position that became available at Washington Mills after April 1996.

This court rejected defendants' argument based on an uncertified, unauthenticated transcript of a June 3, 1997 telephone conversation between plaintiff and defendant James Scavone. In this telephone conversation, plaintiff advised Mr. Scavone that he had been approved for Social Security disability insurance benefits and no longer wanted to return to work at Washington Mills. Defendants argued that this showed the absence of a genuine issue with respect to plaintiff's *prima facie* case of employment discrimination. This court also noted that the parties had not addressed the impact of the Supreme Court's decision in *Cleveland v. Policy Management Systems*, which held that where the plaintiff's sworn statements in an application for disability benefits appear to negate the "otherwise qualified" element of the plaintiff's *prima facie* ADA case, the plaintiff must come forward with an explanation of the inconsistency in order to avoid summary judgment.

Defendants have submitted an affidavit and memorandum of law in support of summary judgment upon reconsideration, arguing as follows:

1. Based on the matters set forth in the transcripts of three tape recorded conversations between plaintiff and Washington Mills' personnel, plaintiff cannot show that Washington Mills denied him a position that he could perform.

2. The case should be dismissed under *Cleveland v. Policy Management Systems.*

For the reasons that follow, upon reconsideration in light of these matters, defendants' summary judgment motion should be granted and the case should be dismissed.

## DISCUSSION

### I. *Prima Facie* Employment Discrimination.

As an initial matter, the court incorporates by reference its prior recommendations that defendants' summary judgment motion should be granted to the extent that it seeks to limit the complaint to the matters alleged in plaintiff's first EEOC charge, and to the extent that it seeks dismissal of plaintiff's complaint against defendants Scavone and Campbell in their individual capacities. This Report and Recommendation is limited to reconsideration of the remaining ground for defendants' motion—*i.e.,* plaintiff's failure to establish a *prima facie* case of employment discrimination—in light of the evidence contained in the now-authenticated telephone transcripts, and in light of the Supreme Court's holding in *Cleveland v. Policy Management Systems.*

In order to establish a *prima facie* case of employment discrimination under the ADA, plaintiff must show (1) that his employer is subject to the ADA, (2) that he is disabled within the meaning of the ADA, (3) that he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation, and (4) that he suffered an adverse employment action because of his disability.

*Wernick v. Federal Reserve Bank,* 91 F.3d 379, 383 (2d Cir.1996); *Micari v. Trans World Airlines, Inc.,* 43 F.Supp.2d 275, 279 (E.D.N.Y.1999), *aff'd,* 205 F.3d 1323, 1999 WL 1254518 (2d Cir. December 16, 1999). Similarly, in order to establish a *prima facie* case of employment discrimination in violation of Title VII, a plaintiff who asserts that he has been denied a position must show (1) that he belongs to a protected class, (2) that he was qualified for the position, (3) that he was denied the position, and (4) that the denial occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class. *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 311–12 (2d Cir.1997); *see generally Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 & n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[1]

In this case, defendants contend that plaintiff cannot demonstrate *prima facie* employment discrimination under either Title VII or the ADA because he cannot show that he was denied a position for which he was qualified. Defendants rely on the stipulated tape transcripts, submitted as Exhibits A–D to Item 34. Exhibit A is the transcript of a telephone conversation which took place on May 13, 1997. During that conversation plaintiff and Mr. Scavone discussed the availability of a Senior Grain Shipping Inspector position and a Dome Lab position. They agreed that, given plaintiff's physical restrictions, the most likely position for plaintiff to return to would be the Dome Lab job, and that the Inspector position would be posted so that other employees

---

1. Under both the ADA and Title VII, once the plaintiff has presented a *prima facie* case of employment discrimination, the defendant has the burden of producing, " 'through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248,

255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998); *Wallengren v. Samuel French, Inc.,* 39 F.Supp.2d 343, 346–47 (S.D.N.Y.1999). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. 1089.

could bid on it (*see* Item 34, Ex. A, pp. 1–4). The transcript of the May 13, 1997 conversation reflects the following:

Okay all right we'll consider I can make some kind of arrangements for the lab. Yeah.

And we will consider that one to be the one that is most likely for you to be able to do. Yeah.

The lab and also it actually allows you to work by yourself actually.

Well I want to work by myself I don't like anybody in there I don't want to be bothered with anybody with their stupidity I want to be left alone.

All right then I will post the [Senior Grain Inspector] job today get on with that. See that one involves more of a multitude of people anyway. And then we will leave the plant lab as an option then.

Yes.

(Item 34, Ex. A, p. 4).

This transcript shows that, as of May 13, 1997, plaintiff agreed to the posting of the Senior Grain Inspector job so that other employees could bid on it. The transcript also shows that the only option for plaintiff's return to work at Washington Mills, given his physical restrictions, was the Dome Lab job.

On June 3, 1997, plaintiff had the following telephone conversation with Ronald Luber, a rehabilitation director for the Workers' Compensation Board:

So basically the company wants to review further medical reports before they would allow you to return to work. Right.

But you are in negotiations with the company to try to return to work.

Well I am not going to do that now because I was deemed disabled by the Social Security department.

Oh so you did get a favorable decision. Right I received that on Saturday.

\*     \*     \*     \*     \*     \*

In light of that that would basically ruin you[r] social security to take that position.

Well I can not take that position now. They have ruled me disabled. Now the employer does not know that yet I am going to call him in a few moments ... and tell him this. Because my problems are [too] severe and if social security deemed me totally disabled then this compensation system is going to do the same because I am not finished with them yet.

(Item 34, Ex. B, p. 3). That same day, plaintiff had the following telephone conversation with Mr. Scavone:

Just calling to let you know that I've been deemed totally disabled by the social security department. And what would be my next step.

In regards to what. I don't understand what you are asking me.

Okay social security says I am disabled because of my work injuries. So now where do we go from here. Fill out these total permanent disability paper[s] you sent me.

Yeah I sent those to you awhile ago yeah. So you can have those filled out and attach whatever documentation you got from social security.

Yeah.

\*     \*     \*     \*     \*     \*

Umm and okay then the question about coming back to work is really out now because you are disabled.

Right.

For social security purposes.

Right.

(Item 34, Ex. C, pp. 1, 3).

On May 5, 1998, Mr. Scavone sent plaintiff a letter advising him that a General Cleaning position had become available due to a retirement (Item 19, Ex. Y). The position had the same physical classification as the Dome Lab job (Scavone Aff., Item 15, ¶ 44). Plaintiff never pursued the General Cleaning position (*id.*).

On the basis of this evidence, it is clear that even if plaintiff could have performed the physical requirements of an available position at Washington Mills, he informed Mr. Scavone that he did not wish to do so because he had been awarded Social Security disability benefits. Despite being invited to pursue positions which subsequently became available, he again chose not to do so. Accordingly, plaintiff cannot meet his *prima facie* burden of establishing, for the purposes of either his Title VII or his ADA claim, that defendants denied him a position that he was qualified for. Those claims should be dismissed. *See Weaver v. Florida Power & Light*, 1996 WL 479117, at *7 (S.D.Fla. July 16, 1996) (summary judgment granted to employer who offered plaintiff the opportunity to transfer to various other positions for which she was qualified and which she was able to perform, but plaintiff chose not to do so for personal reasons); *see also Wernick v. Fed. Reserve Bank of New York*, 1995 WL 598973 (S.D.N.Y. October 10, 1995) (summary judgment granted to employer where plaintiff with back condition refused reassignment to a number of other positions which she admitted she could perform), *aff'd*, 91 F.3d 379 (2d Cir.1996); *cf. Pattison v. Meijer, Inc.*, 897 F.Supp. 1002, 1008 (W.D.Mich.1995) (granting summary judgment to employer where employee rejected reasonable accommodation offer); *Marschand v. Norfolk & Western R. Co.*, 876 F.Supp. 1528, 1544 (N.D.Ind. 1995), *aff'd*, 81 F.3d 714 (7th Cir.1996) (same).

## II. *Cleveland v. Policy Management Systems Corp.*

On May 24, 1999, the Supreme Court decided *Cleveland v. Policy Management Systems Corp.*, *supra*, in which it was held that receipt of Social Security disability insurance ("SSDI") benefits neither automatically estops the recipient from pursuing an ADA claim nor "erect[s] a strong presumption against the recipient's success under the ADA." *Id.*, 526 U.S. at ——, 119 S.Ct. at 1600. Instead, where the plaintiff's sworn statements in an application for disability benefits appear to negate the "otherwise qualified" element of the plaintiff's ADA case, the plaintiff "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim." *Id.* at 1603. Rather, to defeat summary judgment, the plaintiff must come forward with an explanation of the inconsistency "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job," at least with "reasonable accommodation." *Id.* at 1604; *see also Mitchell v. Washingtonville Central School District*, 190 F.3d 1, 7 (2d Cir.1999) (if requirements for judicial estoppel are otherwise met, successful SSDI claimant may be prevented from claiming that he was able to perform the essential functions of a particular job for the purposes of his ADA claim).

In this case, plaintiff stated in his SSDI application that he was unable to return to work "due to the loss of use of [his] left shoulder and arm. Also continuing to have problems with the loss of use of the right shoulder and arm" (Item 19, Ex. T, p. 4). Plaintiff also submitted a "Request for Reconsideration" form, dated October 16, 1995, on which he stated:

> I can not lift 50 lbs. continuously and carry 25 lbs. in the manner you stated. There is something very wrong inside of my left shoulder and arm. How can something hurt so bad if there is only impingement showing. The right arm is also full of pain on movement.

(*id.*, p. 5). On his "Request for a Hearing by Administrative Law Judge" form, dated February 9, 1996, plaintiff stated that he was "disabled due to a combination of conditions, including injuries to both arms, bladder inflammation condition, medication side effects, [and] arthritis" (*id.*, p. 10). His "[r]ight arm condition has worsened," and he could "[h]ardly get out of [the] house during daytime" (*id.*, p. 12). In finding that plaintiff was entitled to SSDI

benefits, the ALJ found that the medical evidence—including several doctors' reports and results of an MRI taken on July 3, 1996—established that plaintiff's "severe left shoulder supraspinatus tendinitis and arthritis in the right shoulder have resulted in severe functional limitations despite undergoing pain management which effectively precludes the performance of his past relevant work as a mill worker" (Item 19, Ex. U, p. 4).

■■■ Despite ample opportunity to do so, plaintiff has not come forward with an explanation of the inconsistency between the statements in his SSDI application and his claim in this case that he was qualified to perform the essential functions of the Dome Lab job, or any job at Washington Mills, with or without reasonable accommodation. Absent such an explanation, there is no basis for a reasonable juror to conclude that plaintiff could nonetheless perform the essential functions of a job at Washington Mills, and defendants are entitled to summary judgment dismissing plaintiff's ADA claim. *See Cleveland v. Policy Management Systems, supra,* 526 U.S. at ——, 119 S.Ct. at 1604; *Mitchell v. Washingtonville Central School District, supra,* 190 F.3d at 7; *Micari v. Trans World Airlines, supra,* 43 F.Supp.2d at 280 (citing *Weigel v. Target Stores,* 122 F.3d 461 (7th Cir.1997)).

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (**Item 14**) should be granted in its entirety, and the case should be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

February 10, 2000.