**Bernard MARS, Plaintiff,**

v.

**SERVICE NOW FOR ADULT PERSONS (S.N.A.P.),
Defendant.**

**No. 97 CV 4595(NG)(CLP).**

United States District Court,
E.D. New York.

Feb. 23, 2004.

Transcript of Sentencing, January 10, 2001, at 46–47.

Bernard Mars, pro se, Leon Friedman, Richard Ware Levitt, Attorney At Law, New York, NY, for Plaintiff.

William D. Wexler, North Babylon, NY, for Defendant.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiff, Bernard Mars, commenced this action *pro se*, alleging that defendant, S.N.A.P., violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, when it terminated his employment. On December 14, 1998, plaintiff's request for the appointment of counsel from the *Pro Bono* Panel was granted. Via letter dated August 6, 1999, plaintiff's counsel withdrew because of time constraints, and on August 18, 1999, new *pro bono* counsel was appointed. Defendant now moves pursuant to Federal Rule of Civil Procedure 56, for summary judgment on both of plaintiff's claims.

### Facts

Unless otherwise indicated, the following facts are undisputed.

Plaintiff, a retired Lieutenant Colonel, and a World War II veteran, was hired by S.N.A.P., an organization that provides services for the aged, in 1987. At that time plaintiff was seventy-five years old. Initially, plaintiff served as an escort and then as a van driver, transporting stroke victims. In addition to plaintiff, defendant employed five other drivers, all of whom were over the age of 65. From 1987 to 1994 plaintiff performed exceptionally in his responsibilities at S.N.A.P., as evidenced by his annual reviews. During this

time plaintiff developed a strong relationship with his supervisor, Dr. Linda Leest, who testified that not only was plaintiff the "most active person on the staff," but that he filled a void in her life created by the death of her father in 1988.

In July of 1994, plaintiff was involved in an automobile accident while on the job, as a result of which he was taken to the hospital and received medical attention.[1] During his deposition, plaintiff indicated that Dr. Leest, who holds a doctorate in social work, and Ruth Kamins, who also worked for S.N.A.P., met with him following the accident and indicated to him that they did not want him to stop working. Plaintiff also testified that he was unsteady and could not move fast enough to drive for a period of time following the accident, but felt he was ready to drive by September of that year. However, when plaintiff met with Dr. Leest on November 4, 1994, he told her that he was not ready to return to work because his blood pressure was elevated and he was experiencing dizzy spells. During this meeting, plaintiff claims, Dr. Leest made some references to age. Dr. Leest testified that during this meeting she observed that plaintiff's physical capacity was "tremendously diminished . . . and that he could not walk without holding onto the wall."

Plaintiff then was reexamined by his doctor, who told him that his blood pressure had returned to normal. Plaintiff met again with Dr. Leest on November 14, 1994, and discussed returning to work. Plaintiff states that Dr. Leest again made reference to his age and told him that, in accordance with defendant's written policy, he would not be allowed to return to work

---

1. Plaintiff was involved in two other accidents while driving at S.N.A.P., neither of which were his fault or resulted in injuries.

until he was examined by a physician chosen by defendant. Beyond Dr. Leest's alleged comments about age, plaintiff testified that no one else at S.N.A.P. discriminated against him because of his age or any other reason.

Plaintiff agreed to meet with S.N.A.P.'s physician, and on December 15, 1994 he was examined by Dr. Benman. Following the examination, Dr. Benman informed Dr. Leest that he needed "more cardiac and neurological evaluations before he [could] make a recommendation" regarding plaintiff's ability to return to work. Dr. Benman indicated in a letter dated December 19, 1994, that neither complete cardiac or neurological evaluations had been provided and that both were necessary for his evaluation. On December 22, 1994, plaintiff provided Dr. Benman with the report of an opthalomologist and a neurologist which indicated that plaintiff was not suffering from any visual or auditory limitations. Dr. Leest testified that Dr. Benman told her that he was getting plaintiff the necessary tests and that she did not communicate further with anyone regarding the requested testing until plaintiff came to see her on January 31, 1995 and told her he did not want to take any more tests.

On January 21, 1995, plaintiff wrote a letter to Dr. Leest requesting a meeting. In that letter plaintiff indicated that he believed Dr. Benman had all of the necessary medical reports. In response to this request Dr. Leest met with plaintiff ten days later. During that meeting Dr. Leest discussed the possibility of retirement with plaintiff and told plaintiff that Dr. Benman needed additional reports. Plaintiff asked Dr. Leest if he would be allowed to return to work if he took the tests requested by Dr. Benman. Plaintiff testified that Dr. Leest was non-committal to this question, which plaintiff interpreted to mean that he would not be allowed to return to work.

Dr. Leest testified that she would not answer plaintiff because it was not her decision, but that she unequivocally wanted him to return if he was healthy enough to do so. Plaintiff also indicated that Dr. Leest told him that, if he agreed to retire, she would extend his health benefits, help him obtain unemployment benefits and throw him a party. Dr. Leest testified that, while she was concerned that plaintiff might lose his health coverage, and that she wanted to have a party for plaintiff, neither offer was an attempt to procure his resignation. Rather, Dr. Leest testified, she wanted to ensure plaintiff's continued heath coverage as he had complained of testicular pain and that she wanted to throw him a party because of his extended absence. Dr. Leest also testified that, during this meeting, "plaintiff had difficulty getting out of his chair" and that, because of this, she had concerns about his ability to assist S.N.A.P.'s clients, most of whom suffer from physical limitations themselves. Plaintiff does not contest that he had difficulty getting out of his chair, but instead argues that he was not experiencing "dizzy spells" or "wobbling" and that, in any event, Dr. Leest could not determine his ability to drive by observing him getting up from a chair.

Plaintiff returned to S.N.A.P. the following day, rejected Dr. Leest's offer, refused to sign a document indicating that he had resigned, and requested a document that would allow him to receive unemployment benefits and continued health insurance. On February 2, 1995, Dr. Leest sent plaintiff a letter stating that there had been a misunderstanding, that plaintiff was not terminated and that, if he took and passed the required tests, he would be allowed to return to work. Plaintiff responded by letter dated February 6, 1995, refuting that he had not been fired. On February 8, 1995, the Chairman of the Board of S.N.A.P., Abraham Siemens, wrote plain-

tiff indicating that, if he received medical clearance, he could "reapply" for the position he had previously held.

Plaintiff applied for and received unemployment insurance. As part of its findings, the New York State Unemployment Insurance Board found that plaintiff did not voluntarily leave S.N.A.P. because plaintiff was not given any assurances that, if he took and passed the requested medical tests, he would be allowed to return to work.

### Standard

A motion for summary judgment is properly granted where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir.1995). The burden is on the moving party to demonstrate that there are no material facts genuinely in dispute. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000). In deciding a motion for summary judgment, the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Howley v. Town of Stratford*, 217 F.3d 141, 150–151 (2d Cir. 2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. A motion for summary judgment cannot therefore be defeated by "mere speculation or conjecture." *Giordano v. City of New York*, 274 F.3d 740, 749–50 (2d Cir. 2001).

In employment discrimination actions, courts are particularly cautious about granting summary judgment where intent is at issue. This is because "a victim ... [is] seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991). Consequently, where a defendant's intent and state of mind are placed at issue, summary judgment is ordinarily inappropriate." *Id.* On the other hand, "the summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Therefore, in the discrimination context, a plaintiff "must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Micari v. Trans World Airlines, Inc.*, 43 F.Supp.2d 275, 278 (E.D.N.Y.1999); *Schwapp v. Town of Avon*, 118 F.3d 106, 109 (2d Cir.1997).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth the burden-shifting framework for discrimination cases. *See also Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir.1997)(framework the same in Title VII and ADEA cases). First, a plaintiff claiming unlawful termination must make a *prima facie* case showing of: (1) membership in a protected class; (2) qualification for the position; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997).

Once a plaintiff has established all four elements of the *prima facie* case, the burden shifts to defendant to articulate

a legitimate, nondiscriminatory reason for the challenged termination. Once an employer has done so, the presumption of discrimination drops from the case, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and the burden shifts back to the plaintiff to prove "that the legitimate reasons offered by the defendant ... were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Proof of pretext alone, however, is not necessarily sufficient to defeat a motion for summary judgment. See St. Mary's, 509 U.S. at 524, 113 S.Ct. 2742 ("proof that the employer's proffered reason is unpersuasive does not necessarily establish that plaintiff's proffered reason is correct"). "Once a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, the McDonnell Douglas presumptions disappear from the case and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." James v. New York Racing Assoc., 233 F.3d 149 (2nd Cir.2000).

## Discussion

■■ Plaintiff cannot demonstrate that he was qualified for his position or that his discharge occurred under circumstances giving rise to an inference of discrimination. To assess job qualifications for establishing a prima facie case, the court must assess whether or not plaintiff met the employer's performance standards. See Stein v. McGraw–Hill Inc., 782 F.Supp. 207, 212 (S.D.N.Y.1992). Absent bad faith, an employer may determine whether any employee's job performance is satisfactory based on its own criteria, and the court will not review whether the criteria are reasonable. Thornley v. Pen-

ton Publishing, Inc., 104 F.3d 26, 29 (2d Cir.1997).

■ Here, it is not disputed that S.N.A.P. had a company policy that, prior to returning to work, an employee would be required to obtain medical clearance from a doctor appointed by S.N.A.P. It is also undisputed that plaintiff did not obtain the necessary clearance. Accordingly, plaintiff was not qualified for the position. His testimony that he did not know more testing was required until January 14, 1995, does not help him. At no point was plaintiff foreclosed from taking the tests and providing Dr. Benman with the requested information. Rather, it was plaintiff who refused to undergo the additional medical examinations, thereby rendering himself unqualified for his position. Moreover, plaintiff's assertions that he was not promised that he could return to work if he passed the tests do not eliminate his obligation to provide proof of his qualifications, namely, that he took and passed the requested medical exams.

■ Plaintiff has also failed to demonstrate that he was discharged under circumstances giving rise to an inference of discrimination. Plaintiff was 75 years old when he was hired by Dr. Leest, who knew he was in an age-protected class at that time. Accordingly, when Dr. Leest refused to allow him to return to his job nine years later, it is illogical to assume that Dr. Leest was motivated by discriminatory animus. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)(when the person who makes the decision to hire also makes the decision to fire, a finding of invidious discrimination is unlikely). At the time plaintiff was terminated, allegedly because of his age, S.N.A.P. employed six drivers, all of whom were over the age of 65, five were older than 70, and the person who was hired to

replace plaintiff was also over the age of 70. Moreover, there is no allegation that any S.N.A.P. employee who was younger than plaintiff received different treatment from S.N.AP.

 The vague comments referred to by plaintiff, that Dr. Leest made reference to "some people complaining about old men driving vehicles" do not satisfy plaintiff's burden of overcoming defendant's neutral explanation. Stray remarks in the workplace, by themselves, without a demonstrated nexus to the complained-of personnel action, will not defeat an otherwise well-founded motion for summary judgment. *Morris v. N.Y. City Dep't of Sanitation*, 2003 WL 1739009 (S.D.N.Y. Apr.2, 2003); *See Weber v. Parfums Givenchy, Inc.*, 49 F.Supp.2d 343, 362 (S.D.N.Y.1999)("Stray remarks even if made by the decision maker, do not constitute sufficient evidence to make [out] discrimination.") Here, the record is devoid of discriminatory animus on the part of defendants. In fact, the record as a whole suggests that S.N.A.P., and Dr. Leest in particular, valued plaintiff as an employee, enjoyed his company and were concerned about his well-being. Plaintiff's statements during his deposition that he wanted to "hurt Dr. Leest," and that he was "just getting started" in this regard, illustrate his intentions in commencing this lawsuit, namely, exacting a measure of revenge for a perceived slight. This testimony suggests animus on his part, not discriminatory animus on the part of the defendants.

For these reasons, plaintiff has failed to make a *prima facie* showing of discrimination. But, even assuming for the purposes of this motion that plaintiff can meet the modest burden required of a *prima facie* case, his claims cannot withstand this motion for summary judgment because the evidence, taken as a whole, is insufficient for a reasonable jury to conclude that plaintiff was terminated because of his age. *Fisher v. Vassar College*, 114 F.3d 1332, 1339 (2d Cir.1997) ("an employment discrimination plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext for discrimination, either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both").

Plaintiff has offered no evidence that S.N.A.P. "departed from its usual employment practices and procedures" in dealing with plaintiff. *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 97 (2d Cir.1999) (*citing Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir.1997), for definition of disparate treatment). Nor are the alleged comments of Dr. Leest regarding plaintiff's age sufficient to support an inference that age discrimination was a motivating factor in S.N.A.P.'s decision to terminate plaintiff. *See Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1225 (2d Cir.1994) (plaintiff must establish a genuine issue of material fact as "to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision"); *Sacay v. The Research Foundation of the City Univ. of New York*, 193 F.Supp.2d 611, 631 (E.D.N.Y.2002) (same). The record indicates that S.N.A.P. refused to allow plaintiff to return to work because plaintiff refused to take medical tests that would have allowed Dr. Benman to assess his ability to perform. Plaintiff provides no explanation for this refusal beyond that he believed he was fired and therefore not obligated to undergo the medical testing. In sum, plaintiff complains that he was discharged from a position to which defendant stated he could return, provided he passed certain requested medical exams. Whether the position he would be re-

turning to was technically new or a continuation of his old position, in the absence of his compliance with a reasonable and neutral requirement, and without any evidence that the requirement was applied differently to a younger person, plaintiff's claim must be dismissed.

For the foregoing reasons, this court finds that plaintiff has failed to offer evidence sufficient for any reasonable jury to find that age was the motivating factor in S.N.A.P.'s decision to replace him. On the contrary, the evidence is overwhelming that, following plaintiff's repeated assertions that he was unable to work and subsequent refusals to submit to the requested medical examinations, S.N.A.P. replaced plaintiff because he was not qualified to be a driver. Defendant's motion for summary judgment on plaintiff's federal age discrimination claims is therefore granted. Since "the standard of proof governing an employment discrimination claim raised under the [NYSHRL] is the same as the standard of proof for an ADEA claim," *see Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001); *Gambello v. Time Warner Communications, Inc.,* 186 F.Supp.2d 209, 220 (E.D.N.Y.2002), summary judgment is granted to defendant on plaintiff's age-related state law discrimination claims as well.

### Conclusion

Defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for defendant.

**SO ORDERED.**