**Shirley WEIGEL, Plaintiff–Appellant,**

v.

**TARGET STORES, a Division of Dayton Hudson Corporation, Defendant–Appellee.**

No. 96–3719.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1997.

Decided Aug. 26, 1997.

Cassandra B. Westgate, Virginia Leigh Erdman (argued), Terwilliger, Wakeen, Piehler & Conway, Wausau, WI, for Plaintiff–Appellant.

John M. Loomis (argued), Katherine L. Williams, Beck, Chaet, Loomis, Molony & Bamberger, Milwaukee, WI, for Defendant–Appellee.

Before CUMMINGS, KANNE, and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Shirley Weigel contends that Target Stores denied her benefits and terminated her employment because of her depression disability, allegedly in violation of the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12101 *et seq.*[1] Ruling on the parties' cross-motions for summary judgment, the district court granted summary judgment in favor of Target. Weigel appeals and we affirm.

## BACKGROUND

Weigel was hired by Target in 1989 and worked as a cashier supervisor. On August 30, 1993, she was hospitalized for major depression for approximately 2½ weeks, and

---

1. Weigel also asserted a claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2611 *et seq.*, with respect to which the district court entered summary judgment in Target's favor because Weigel had not worked the requisite number of hours to be eligible for the benefits and protections provided by that Act. Weigel does not appeal the dismissal of her FMLA claim.

was directed by her treating physician to remain off work. Target maintained a leave of absence policy under the terms of which Weigel was entitled to paid medical leave for up to 150 days. She went on a paid medical leave pursuant to Target's paid leave policy from September 3, 1993, through February 6, 1994. During that time, she periodically submitted disability claim forms to Target in which she represented that she was "wholly unable to work." The claim forms were accompanied by Attending Physician's Statements in which Weigel's psychiatrist, Dr. Minnihan, represented that she was "totally disabled" for her job and "any other work."

On January 3, 1994, Store Team Leader Tim D'Amato wrote to Weigel and informed her that her short term disability would end February 6, 1994. He further informed her that at the end of her short term disability leave period, she had the following options:

* Returning to work in an equivalent position

* Taking an unpaid medical leave of absence

* Resigning from your position with Target

Plaintiff's App. 26. Weigel admits that she never called D'Amato to discuss her options at the end of her paid leave. However, on February 4, 1994, Weigel submitted a disability form to Target with the accompanying physician's statement indicating that she would be able to return to work February 14, 1994, on a trial basis.

Her return to work was short-lived. After returning to work on February 14, Weigel experienced memory loss and found it difficult to perform her job. By February 25, 1994, she found that she was unable to work. She consulted with her treating physician, Dr. Minnihan, who gave her a note recommending that she take a medical leave from work "until further notice." Weigel delivered the note to Target that same day. Later that day, D'Amato issued a letter to Weigel terminating her employment with Target. In pertinent part, the letter states:

This letter is in response to your request for leave of absence dated February 25, 1994. According to Target policy, you must be available to work 14 consecutive days upon return from short term disability to receive extended benefits. Upon review of this policy, I regret to inform you your employment with Target will be terminated.

Plaintiff's App. 25.

On March 5, 1994, Weigel completed an application for Social Security benefits, stating that she became unable to work because of a disabling condition on September 1, 1993, and that she was still disabled. Weigel has not worked since leaving Target and now receives Social Security benefits. In an affidavit filed on behalf of Weigel in opposition to Target's motion for summary judgment, her psychologist, Dennis Elmergreen, Psy. D., opined that had she been granted a medical leave on February 25, "there was a good chance that Shirley Weigel could have returned to her position at Target."

In granting summary judgment in favor of Target, the district court relied heavily on Weigel's representation in her Social Security application that she was totally disabled, and on her physician's statement that she should not work until further notice. The district court concluded that these representations "confirm that she was not able to perform the essential functions of her job with or without reasonable accommodation. Accordingly, she is not a qualified individual with a disability." Memorandum Opinion and Order at 7. The district judge also discounted Dr. Elmergreen's representation that there was a good chance that Weigel could have returned to work had she been given additional leave, because no underlying facts or data were presented to support the opinion, rendering Elmergreen's speculation insufficient to create a triable issue. Because Weigel failed to establish a triable issue as to whether she was a "qualified individual with a disability," the district court granted Target's motion for summary judgment.

## ANALYSIS

The Americans with Disabilities Act of 1990 (ADA or Act), Pub.L. No. 101–336, 104 Stat. 327 (1990), codified in pertinent part at 42 U.S.C. § 12101 *et seq.*, prohibits an employer from discriminating against "a

qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112. In addition to prohibiting adverse employment decisions (*i.e.*, disparate treatment), such as termination or denial of benefits, when such decisions are based on a qualified individual's actual or perceived disability, see 42 U.S.C. §§ 12112(a), 12112(b)(3) and (4), the Act also prohibits an employer from failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, 42 U.S.C. § 12112(b)(5)(A). Disparate treatment claims are analyzed somewhat differently than failure to accommodate claims. In disparate treatment claims, the *McDonnell Douglas* burden-shifting framework commonly employed in Title VII and ADEA actions is generally appropriate, see *DeLuca v. Winer Industries*, 53 F.3d 793 (7th Cir.1995), whereas in failure to accommodate claims the *McDonnell Douglas* framework is "unnecessary and inappropriate." *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1284 (7th Cir. 1996); see also *Leffel v. Valley Financial Servs.*, 113 F.3d 787, 792 n. 4 (7th Cir.1997). Accordingly it is important for the plaintiff to be clear about the nature of the claim he or she is asserting.

In the district court proceedings, Weigel was quite emphatic that hers is not a failure to accommodate claim but rather it is a disparate treatment claim alleging that Target discriminated against her by refusing to grant her extended unpaid leave for the treatment of her depression and by terminating her after she requested such leave. See, *e.g.*, Plaintiff's Brief in Support of Motion for Summary Judgment at 2 ("The plaintiff, Shirley Weigel, was unlawfully discriminated against when, because of her disability, she was denied an unpaid leave of absence, a benefit to which she was entitled as a level III employee of Target, and was terminated."); Plaintiff's Reply in Support of Motion for Summary Judgment at 1, 3 ("Shirley Weigel is not claiming that Target unlawfully failed to provide her a reasonable accommodation in the form of a medical leave of absence." * * * "She simply needed a benefit to which she was entitled.... Target discriminatorily denied Shirley this leave."); Plaintiff's Response to Defendant's Motion for Summary Judgment at 5 ("Shirley Weigel's claim is not based on the defendant's failure to reasonably accommodate her disability, but on 1) the Defendant's failure to grant Shirley a medical leave of absence, ... and 2) on the Defendant's termination of her, on the basis of her disability."). In her submissions to this Court, Weigel continues to press her disparate treatment claim; however, in her opening brief, she intimates that the unpaid medical leave she sought was a reasonable accommodation and Target discriminated against her by failing to provide such an accommodation. Because issues not raised below are waived on appeal, see, *e.g.*, *McKinney v. Indiana Michigan Power Co.*, 113 F.3d 770, 773 (7th Cir.1997) (arguments raised for the first time on appeal are waived); *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir.1993) ("Having forsaken the opportunity to articulate ... argument in its memorandum [opposing summary judgment], [plaintiff] waived it."), we must take Weigel's case as she presented it to the district court; accordingly, we consider only Weigel's disparate treatment claim and shall not delve into the issue of whether Target discriminated against her by failing to reasonably accommodate her disability.[2]

2. More specifically, because Weigel does not press a failure to accommodate claim, it is unnecessary to explore whether Target considered the note from Dr. Minnihan (recommending that Weigel take leave "until further notice") to be a request for accommodation; whether Target failed to engage properly in the "interactive process" required by the ADA for determining an employee's need for accommodation, see *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135–1136 (7th Cir.1996); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285–1286 (7th Cir.1996); or, whether Weigel's request for leave "until further notice" was a reasonable accommodation, see, *e.g.*, *Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir.1996) (while "reasonable allowance of time for medical care and treatment may, in appropriate circumstances, constitute a reasonable accommodation," employer is "not required to wait indefinitely for [plaintiff's] recovery"); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir.1995) ("Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, rea-

As is the case with claims of race, gender and age discrimination, a plaintiff may attempt to establish disability discrimination either directly or indirectly. Lacking direct evidence of discrimination, Weigel has chosen the latter course and resorts to the familiar *McDonnell Douglas* burden-shifting methodology. By now, the *McDonnell Douglas* framework is sufficiently well known that we can dispense with the standard recitation of the methodology and proceed directly to its application in this case. See *Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago,* 104 F.3d 1004, 1007 (7th Cir.1997). Those desiring a refresher in the *McDonnell Douglas* methodology in the context of an ADA claim should consult *Leffel v. Valley Financial Servs.,* 113 F.3d 787, 792–794 (7th Cir.1997), where it is discussed in detail.

■ In *Leffel,* a panel of this Court set out the prima facie showing required of an ADA plaintiff under the *McDonnell Douglas* framework as follows: "(1) that she is disabled within the meaning of the ADA, (2) that her work performance met her employer's legitimate expectations, (3) that she was discharged [or was subjected to some other adverse employment action], and (4) that the circumstances surrounding [the adverse action] indicate that it is more likely than not that her disability was the reason for these adverse actions." 113 F.3d at 794. Of course, the ADA's proscription against employment discrimination protects only "qualified individual[s] with a disability." 42 U.S.C. § 12112 ("No covered entity shall discriminate against a qualified individual with a disability because of the disability....."). Accordingly, the elements of a plaintiff's pri-

ma facie showing must also include a showing that the plaintiff is a member of the protected class—*i.e.,* a "qualified individual with a disability." See *DeLuca,* 53 F.3d at 797 (including membership in protected class as an element of prima facie showing); *Rothman v. Emory University,* 123 F.3d 446, 451 (7th Cir.1997) (same).[3] This, of course, is in accord with this Court's requirement in Title VII and ADEA actions that plaintiffs establish membership in a protected class as part of their prima facie showing. See, *e.g., Oates v. Discovery Zone,* 116 F.3d 1161, 1171 (7th Cir.1997) (Title VII); *Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 680 (7th Cir.1996) (ADEA).

Target concedes that Weigel is "disabled" under the terms of the Act. The issue on appeal focuses on whether Weigel succeeded in raising a genuine issue of material fact as to whether she is a *"qualified individual"* with a disability. The Act defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Target maintains that Weigel cannot establish that she could perform the essential functions of her position in light of (1) her repeated representations (made in connection with her filing of disability claim forms and her application for Social Security disability benefits) that she was totally disabled; (2) her physician's representations to the same effect; and (3) the fact that she qualified for Social Security disability benefits based, *inter alia,* on her representations

sonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question."); *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759–760 (5th Cir.1996) (same); cf. *Monette v. Electronic Data Systems,* 90 F.3d 1173, 1187 (6th Cir.1996) (employer is not required to keep an employee on unpaid medical leave indefinitely until a suitable position becomes available).

**3.** A cursory review of our sister circuits' decisions reveals that most, if not all, of the circuits require—either expressly or by implication—an ADA plaintiff to establish membership in the

protected class (*i.e.,* "qualified individual with a disability") as part of his or her prima facie showing. See, *e.g., E.E.O.C. v. Amego, Inc.,* 110 F.3d 135, 141 n. 2 (1st Cir.1997); *Olson v. General Electric Astrospace,* 101 F.3d 947, 951 (3d Cir.1996); *Ennis v. National Ass'n of Business & Educ. Radio, Inc.,* 53 F.3d 55, 58 (4th Cir.1995); *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995); *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 882 (6th Cir.1996); *Price v. S–B Power Tool,* 75 F.3d 362, 365 (8th Cir. 1996), certiorari denied, —— U.S. ——, 117 S.Ct. 274, 136 L.Ed.2d 197; *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997).

to the Social Security Administration that she is totally disabled.

■ Because this Court has addressed contentions such as these in the past, we begin by briefly reviewing the controlling principles. First, as the district court correctly observed and Target wisely cedes, the Social Security Administration's decision to grant disability benefits to Weigel is not determinative as to whether or not she may be considered a "qualified individual" under the ADA. See *Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir.1992); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 523–524 (7th Cir.1996). While it might seem incongruous at first blush that someone deemed "totally disabled" by the Social Security Administration (SSA) might nevertheless be deemed a "qualified individual" under the ADA, the incongruity is entirely illusory because the terms "totally disabled" and "qualified individual with a disability" are terms of art that must be understood within their respective statutory contexts. This issue was exhaustively examined by the EEOC in a recent Enforcement Guidance entitled "Effect of Representations Made in Applications for Disability Benefits on the Determination of Whether a Person Is a 'Qualified Individual with a Disability' Under the Americans With Disabilities Act of 1990(ADA)" (hereinafter Enforcement Guidance), reprinted in BNA's Americans with Disabilities Act Manual, No. 62 at 70:1251,[4] wherein the EEOC highlighted differences in the relevant statutory frameworks that make an SSA determination of "total disability" nondispositive as to the ADA "qualified individual" inquiry. As the Enforcement Guidance explains, unlike the ADA's "qualified individual" inquiry, which necessarily involves an individualized assessment of the individual and the relevant position, the SSA's inquiry into whether one is "totally disabled" is a generalized one:

The SSA definition of "disability" is inherently different from the ADA definition of "qualified individual with a disability." First, whereas the ADA always requires an individualized inquiry into the ability of a particular person to meet the requirements of a particular position the SSA permits general presumptions about an individual's ability to work. In that regard, the SSA considers some conditions to be presumptively disabling.... Thus, an individual can have a "disability" under the SSA definition and yet in fact still be able to work.

Enforcement Guidance at 70:1257. See also *Overton*, 977 F.2d at 1196 ("the SSA may award disability benefits on a finding that the claimant meets the criteria for a listed disability, without inquiring into his ability to find work within the economy").[5] Most importantly, it is immaterial for purposes of SSA disability determinations whether or not one could work if provided with reasonable accommodations, whereas for ADA purposes, this inquiry is critical.

[U]nlike the ADA definition, the SSA definition does not consider whether the individual can work with reasonable accommodation. An SSA interpretative guidance addressing the effects of the ADA on SSA's disability determination process states,

The fact that an individual may be able to return to a past relevant job, provided that the employer makes accommodations, is not relevant to the issue(s) to be resolved.... [H]ypothetical inquiries about whether an employer would or could make accommodations that would allow return to a prior job would not be appropriate.

Thus, the SSA may find that a person is unable to do any work which exists in the national economy even though s/he can work with a reasonable accommodation. In those instances, the person is both a person with a "disability" under SSA and a

---

4. Available electronically at http://www.eeoc.gov/docs/qidreps.txt.

5. In this connection, although the record is silent on the issue, it is entirely possible that Weigel was presumptively entitled to disability benefits under the Social Security scheme solely by virtue

of having a listed impairment—major depression, see 20 C.F.R. § 404, subpt. P, app. 1, § 112.04(A)(1)—without any separate inquiry into her ability to perform the requirements of jobs in the national economy, let alone an individualized assessment of her ability to perform the essential functions of her own job.

"qualified individual with a disability" under the ADA. Accordingly, a person claiming to be disabled or found to be disabled under SSA programs still may be entitled to protection under the ADA.

Enforcement Guidance at 70:1257. Thus paradoxical as it might seem, a person who, with reasonable accommodation, could perform the essential functions of a particular job—as Weigel claims to be—might nevertheless be deemed to be unable to engage in any substantial gainful activity in the national economy (*i.e.*, "totally disabled") under Social Security regulations. It is because of the fundamental differences between the SSA's definition of disability and the ADA's definition of "qualified individual with a disability," that this Circuit declines to regard an SSA disability determination to be conclusive evidence as to whether one is entitled to protection under the ADA. "Because the ADA's determination of disability and a determination under the Social Security disability system diverge significantly in their respective legal standards and statutory intent, determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA." *Weiler*, 101 F.3d at 523–524.

While SSA disability determinations—and, for that matter, a claimant's representations of "total disability"—may not be dispositive of the issue, they are not irrelevant to the question of whether an ADA plaintiff is a "qualified individual with a disability." Indeed, this Court acknowledged as much in *Overton*, when it noted that the SSA's "determination of disability may be relevant evidence of the severity of Overton's handicap." 977 F.2d at 1196. Similarly, in *Weiler*, this Court found representations made by the plaintiff's psychotherapist (in connection with short term disability benefits claims) that she

(Weiler) could not return to work in any position to be sufficient, absent any evidence to the contrary, to establish the nonexistence of a genuine issue of material fact as to whether she was a "qualified individual with a disability."[6] Because of the similarity between the facts of *Weiler* and the instant case, we quote the pertinent passage in full:

> The undisputed facts establish that Weiler is unable to perform the essential functions of her position. Specifically, a March 2, 1993 letter from Weiler's psychotherapist stated that Weiler could not return to work at HFC [defendant Household Finance Corp.] in any position. Dr. Mahoney reiterated this opinion in writing on numerous occasions and sent these conclusions on to HFC. At no time did Weiler contact HFC and disagree with Dr. Mahoney on this point. In response to a request to admit, Weiler even conceded that "she is no longer able to work for HFC in any capacity." She did not qualify this admission in any way.... Thus, Weiler's own doctor, not HFC, has concluded she could not perform her job, with or without a reasonable accommodation. Therefore, Weiler cannot establish that she is a "qualified individual with a disability" under the ADA—she was no longer qualified to do the job, and no accommodation would allow her to do it. The district court properly held that Weiler failed to meet her burden of proof on this requirement.

*Weiler*, 101 F.3d at 525.

The point here is a simple one: When employees (and/or their physicians) represent that they are "totally disabled," "wholly unable to work," or some other variant to the same effect, employers and factfinders are entitled to take them at their word; and, such representations are relevant evidence of the extent of a plaintiff's disability,

---

6. *Weiler* involved the effect of representations made in connection with claims for short term disabilities under an employer's disability insurance plan. *Overton* involved the effect of the SSA's disability determination (and, by implication, representations made in applying for benefits) under the Social Security Act. For present purposes this distinction is immaterial. As explained in the EEOC Enforcement Guidance, the ADA's definition of a "qualified individual with a disability" differs from both the SSA's definition

of "totally disabled" and most, if not all, definitions of disability under disability insurance plans because, among other things, the latter do not take into account the ameliorative effect of reasonable accommodations. Thus as a general matter, SSA disability determinations and representations made in benefits applications will not be conclusive as to whether one is a "qualified individual with a disability" under the ADA. Both, however, may be relevant and probative evidence on this issue.

upon which an employer may rely in attempting to establish that an ADA plaintiff is not a "qualified individual with a disability." At the same time, because the SSA's definition of disability—as well as those of most disability insurance plans-differs materially from the ADA's definition of a "qualified individual with a disability," these representations are not conclusive as to the ADA issue. When a defendant in an ADA action relies on such representations as the basis for contending that a plaintiff is not a "qualified individual," the plaintiff is free to come forward with additional evidence that shows she could perform the essential duties of a desired position with or without reasonable accommodation notwithstanding the fact that she might have been deemed disabled under some other statutory or contractual framework.[7] As a general matter—and as *Weiler* exemplifies—absent some such affirmative showing of the plaintiff's ability to perform the essential functions of the position, there will be no genuine issue of material fact as to whether the plaintiff is a "qualified individual" and the employer will be entitled to judgment as a matter of law.

■ Weigel's position is virtually indistinguishable from that of the plaintiff in *Weiler*. As set out above, Weigel repeatedly represented in connection with her short term disability claims that she was "wholly unable to work" beginning August 30, 1993. These representations were accompanied and corroborated by Attending Physician's Statements in which Dr. Minnihan represented that Weigel was "totally disabled" for both her own job and "any other work." Then, after her unsuccessful attempt to return to work following a five-month medical leave, Weigel provided Target with a note from Dr. Minnihan recommending that she take further medical leave from work "until further notice." Thereafter Weigel represented to the Social Security Administration that she was totally disabled and had been so since September 1, 1993.

Weigel's evidentiary showing in response to the foregoing falls far short of establishing a triable issue as to whether she was a "qualified individual with a disability." In the first place, her reliance on the fact that she received a satisfactory annual performance evaluation and pay increase while she was out of work on paid medical leave is entirely without force. In her view, the performance evaluation, which included some favorable comments (*e.g.*, "well liked by the cashiers," "handles the front end paperwork ... very well," "knows her job functions well") and failed to note that she was out of work on paid medical leave, reveals Target's appraisal that she "was doing her job satisfactorily, *while she was totally disabled and on a medical leave of absence.*" Appellant's Brief at 15. Weigel's suggestion that the evaluation should be read in this manner is too frivolous to require comment. Simply put, while she was on leave, she was not performing her job at all and it is ludicrous to suggest that she was adequately performing while on leave.

More substantial is Weigel's contention that a triable issue concerning whether she was a "qualified individual" was created through her psychologist's affidavit testimony that "to a reasonable degree of medical certainty[,] ... following a medical leave of absence commencing on February 25, 1994, there was a good chance that Shirley Weigel could have returned to her position at Target as a cashier supervisor." Elmergreen Aff. para. 5. The clear import here is that if Target had accommodated Weigel's disability by honoring her request for some additional medical leave, perhaps she would have been able to return to work. While Weigel's argument is plausible enough, her evidentiary showing is problematic.

■ Dr. Elmergreen's affidavit provides nothing more than a naked conclusion unsupported by any factual foundation. Although Weigel is quite correct that under the Federal Rules of Evidence an expert "may testify in terms of opinions or inferences and give reasons therefor without first testifying to the underlying facts or data," Fed.R.Evid. 705, that argument speaks to admissibility;

---

7. For example, the plaintiff in *Overton* was actually working while receiving Social Security disability benefits. See 977 F.2d at 1196.

here we are confronted with the question of how much weight should be accorded to the evidence, not its admissibility. Dr. Elmergreen's simple assertion that "there was a good chance" of Weigel's return to work is simply too conclusory and uninformative to be given any weight. As Chief Judge Posner recently explained:

[A] party cannot assure himself of a trial merely by trotting out in response to a motion for summary judgment his expert's naked conclusion about the ultimate issue.... To allow this would be to confuse admissibility with weight and to disregard the judge-crafted limitations on the admissibility of expert testimony. The fact that a party opposing summary judgment has some admissible evidence does not preclude summary judgment. We and other courts have so held with specific reference to an expert's conclusional statements.... The Federal Rules of Evidence permit "experts to present naked opinions," but "admissibility does not imply utility.... An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process," and his "naked opinion" does not preclude summary judgment.... To put this differently, an expert's opinion based on "unsupported assumptions" and "theoretical speculations" is no bar to summary judgment.

*American Int'l Adjustment Co. v. Galvin,* 86 F.3d 1455, 1464 (7th Cir.1996) (Posner, C.J., dissenting). In an abundance of caution, we have carefully reviewed the entirety of Dr. Elmergreen's deposition in an effort to discern whether it contains any seeds of justification for his expressed opinion. It does not. Nor are we moved by Weigel's urging that the opinion was "based upon his education and experience as a Clinical Psychologist ... and his treatment of Weigel for [2½] years, beginning in December 1993 ... [and] upon his diagnosis of Weigel pursuant to DSM III–R, a published and medically accepted diagnostic and statistical manual for mental illness." Appellant's Brief at 13–14. No doubt Dr. Elmergreen's opinion *was* based on his education, experience as a psychologist, and treatment of Weigel. The problem is that, like the district court, we are left totally in the dark about what in that edu-

cational and experiential background supports his opinions concerning the projected course of Weigel's depression. For example, he says nothing about the course of depression in general or about Weigel's past responsivity to treatment. Nor does he give any explanation of why he believes Weigel would be able to return to work after an additional leave, when she was unable to return to work after her initial five-month leave. Absent some information on that score, his naked conclusion is wholly uninformative and entitled to no weight. Therefore the district court did not err in discounting the opinion as do we. Without it, Weigel is left with nothing to show that a reasonable accommodation (in the form of additional leave) would have rendered her able to return to work and perform the essential functions of her job (or any other). Hence she failed to meet her burden of establishing a genuine issue as to whether she was a "qualified individual with a disability" and Target was entitled to judgment as a matter of law. Accordingly, the judgment of the district court is affirmed.