Arthur STONE, Plaintiff,

v.

The SANGAMON COUNTY SHERIFF'S DEPARTMENT and Neil Williamson, in his capacity as sheriff of Sangamon County, Illinois,[1] Defendants.

No. 98–CV–3301.

United States District Court, C.D. Illinois, Springfield Division.

Oct. 11, 2001.

---

1. On December 8, 1999, the Court dismissed Sangamon County from this suit. See Order dated December 8, 1999, p. 8. Despite this, Stone has continued to name Sangamon County as a defendant. The Court has deleted Sanagmon County's name from the caption of this case so that it reflects the names of only those parties who remain as Defendants.

James P. Baker, Law Offices of James P. Baker, Springfield, IL, J. William Roberts, William P. Hardy, Andrew M. Ramage, Hinshaw & Culbertson, Springfield, IL, for Plaintiff.

## OPINION

RICHARD MILLS, District Judge.

The Sangamon County Sheriff's Department—and the sheriff—are entitled to summary judgment.

## FACTS

Arthur Stone began working at the Sheriff's Department of Sangamon County, Illinois in 1974. In 1977, Stone was allegedly injured in a car accident while on duty. The Court uses the term allegedly because there is no evidence of Stone's injury other than what he asserts in his deposition and affidavit. In any case, this began what Stone claims was more than a decade of back and leg pain.

Stone's alleged injuries did not impede his advancement within the Sheriff's Department. He rose to the civil service rank of sergeant and the staff position of undersheriff before leaving the Sheriff's Department. In March 1985, Stone took a leave of absence in order to obtain employment with the Fraternal Order of Police (the "FOP"). The Sheriff's Department extended Stone's leave of absence on numerous occasions.

In 1989, then—Sheriff J. William De-Marco changed Stone's leave of absence to a medical leave of absence. Who initiated this change is not clear from the pleadings, but it is undisputed that Stone was physically able to perform any job in the Sheriff's Department in July 1990. In fact, Stone's doctor, Dr. William Schroeder, wrote a letter to DeMarco which authorized Stone to return work.

Sometime around July, DeMarco advised Stone that a position as a supervisor of Cap Com—Sangamon County's 911 system—had become available. On July 18, 1990, DeMarco assigned Stone to the position and requested that he report to work on August 15, 1990. Stone requested that he be given until October 1, 1990, to report to work and DeMarco allowed the request.

Despite his request, Stone never reported to Cap Com 911. Instead, he wrote a letter to DeMarco on September 12 stating that he would be retiring as undersheriff. The letter Stone signed did not indicate any medical condition which might prevent him from working at Cap Com 911 or in any other capacity at the Sheriff's Department.

Throughout Stone's entire tenure at the Sheriff's Department he owned a construction company, A.L. Stone. Stone built homes during the late 1970's and early 1980's. Until at least 1995, he laid out walls, installed windows, plumbed, wired, drywalled, roofed, etc. One of the persons for whom Stone roofed, Barry Brown, states that Stone did not appear disabled.

In 1995, Stone left his position at the FOP amid allegations that he misappropriated funds. In an effort to secure pension benefits, Stone contacted DeMarco's successor, Sheriff Neil Williamson, and asked to be reinstated to his former position with the Sheriff's Department. Sheriff Williamson asserts that he told Stone that since he resigned in 1990, he would have to pass the department's Merit test before he could be considered for re-employment. Stone admits that it was possible that Sheriff Williamson told him this, but he cannot remember being informed of the Merit test requirement. Taking the Merit test, according to Sheriff Williamson, has always been an absolute prerequisite to employment at the department during his tenure as sheriff.

Stone and Sheriff Williamson met at least two times during 1995 and 1996 to discuss the possibility of Stone's re-employment. Stone told Sheriff Williamson that he could return to work without any medical restrictions. Sheriff Williamson never indicated that Stone's back condition would bar him from being reinstated in the Sheriff's Department. What troubled

Sheriff Williamson about Stone's possible return were the circumstances of Stone's departure from the FOP. Although Sheriff Williamson did not raise this issue with Stone, he believed the allegations of Stone's wrongdoing were enough to disqualify him from re-employment.

Following his meetings with Stone, Sheriff Williamson met with the department's staff to discuss the issue of Stone's alleged financial improprieties and his possible return to work. Sheriff Williamson also claims he suggested to Stone that he file a formal application and comply with the Sheriff's Merit Commission's Eligibility Procedures if he wished to rejoin the department. Stone denies that the Sheriff ever suggested this. However, a letter from Stone's attorney dated March 25, 1996, stated that he gathered from a conversation with Sheriff Williamson that the Sheriff required Stone to satisfy the Merit Commission's procedures in order to gain re-employment. In any case, Stone never took the merit test.

Stone claims that his back injury was a disability under the Americans with Disabilities Act (the "ADA") and that the Sheriff's Department violated the ADA when it required him to take the Merit test, but did not impose the same requirement on non-disabled officers who sought re-employment. The Sheriff's Department contends that Stone has not established that he is covered by the ADA because he has not shown that he is disabled.

(The Sheriff's Department also argues that Stone's ADA claim must fail since he did not take the Merit test and, thus, cannot show that he complied with the Sheriff Department's application process. For the reasons that follow, the Court will not address this latter contention.)

## STANDARD

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). When determining whether factual issues exist, a "court must view all the evidence in the light most favorable to the non-moving party." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). However, "[s]ummary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *McKenzie v. Illinois Department. of Transportation*, 92 F.3d 473, 479 (7th Cir. 1996) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (1986)).

To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Rather, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting Fed. R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* Finally, "[a]lthough [the court] must, for purposes of summary judgment review, draw any inferences from the record in favor of [the plaintiff, it is] not required to draw every conceivable inference from the record. [It] need draw only reasonable ones."

*See Tyler v. Runyon,* 70 F.3d 458, 467 (7th Cir.1995) (citation omitted).

## ANALYSIS

■ To establish a claim under the ADA, a plaintiff may offer either direct proof of disability discrimination or may use a burden shifting approach. *See, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Weigel v. Target Stores,* 122 F.3d 461, 465 (7th Cir.1997). Since direct evidence is rather uncommon in ADA cases, most plaintiffs rely on the McDonnell Douglas burden-shifting method.

■ Under the McDonnell Douglas test, a plaintiff must first establish a prima facie case of discrimination. For Stone to prove a prima facie case of discriminatory refusal to hire, he must show (1) that he suffers from a disability as defined by the ADA or that the Defendants regarded him as suffering from such a disability; (2) that he was qualified for the position which he sought; (3) that he was not hired for the position; and (4) that the circumstances surrounding the Defendants' refusal to hire him indicate that it is more likely than not that his disability was the reason he was not hired. *See Weigel,* 122 F.3d at 465; *Leffel v. Valley Fin. Servs.,* 113 F.3d 787, 793 (7th Cir.1997). If Stone can establish these four elements, an inference of impermissible discrimination arises and the burden of production shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for their refusal to hire him. *See Brill v. Lante Corp.,* 119 F.3d 1266, 1270 (7th Cir.1997). If the Defendants articulate such a reason, the inference of discrimination dissolves. Stone must then prove that the Defendants' proffered reason is only a pretext for discrimination. *See Crim v. Board of Educ. of Cairo Sch. Dist.,* 147 F.3d 535, 540 (7th Cir.1998).

■ Pretext is "a lie, specifically a phony reason for some action." *See Russell,* 51 F.3d at 68. A plaintiff may establish pretext directly with evidence that the employer was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible. *See Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1039 (7th Cir.1993) (citations omitted). Use of the indirect method requires a plaintiff to show that the employer's proffered reasons are factually baseless, were not the actual motivation for the action, or were insufficient to motivate the action, and provide an inference that the real reason for the employment action was discriminatory. *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 983 (7th Cir.1999); *Helland v. South Bend Community Sch. Corp.,* 93 F.3d 327, 330 (7th Cir.1996), *cert. denied,* 519 U.S. 1092, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997) ("[T]he pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate."). However, the ultimate burden of proving that discrimination was the reason for the challenged conduct " 'remains at all times' " with the plaintiff. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

### Plaintiff's *Prima Facie* Case

■ An individual can establish that he is disabled under the ADA in any one of three ways. *First,* he can show he has a physical or mental impairment that substantially limits one or more of his major life activities. *See* 42 U.S.C. § 12102(2); *see also* 29 C.F.R. § 1630.2(g) (defining "disability"). Such an impairment will only be considered a disability under the ADA "if the resulting limitation is significant." *See Davidson v. Midelfort Clinic,*

*Ltd.,* 133 F.3d 499, 506 (7th Cir.1998). *Second,* he can show that he has a record of such an impairment. *See* 42 U.S.C. § 12102(2). *Third,* he can show that the defendant regarded him as having such an impairment. *See* 42 U.S.C. § 12102(2); *see also Johnson v. American Chamber of Commerce Publishers Inc.,* 108 F.3d 818, 819 (7th Cir.1997) (the ADA forbids discrimination against a person who is regarded as having an impairment, even if they in fact are not impaired).

▆▆ While Stone's Complaint alleges that he can establish a claim under all three of these disability theories, his memorandum discusses only the first two. *See* Def.'s Compl. at ¶ 7; Def.'s Mem. in Opp'n, pp. 8–11. Thus, the Court will limit its discussion to the these two theories and deem the third theory abandoned.

## Actual Impairment That Substantially Limits One or More Life Activities

▆▆ Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Other major life activities could include lifting, reaching, sitting, or standing." *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995).

The only major life activity that Stone identifies in his Complaint is his ability to work. His memorandum opposing the Defendants' Motion for Summary Judgment asserts that he is also disabled with respect to walking and sitting—two other major life activities.[2]

▆▆ Stone presents no medical evidence to substantiate any of his disabilities. He states in his memorandum and his Statement of Additional Undisputed Facts that he consulted doctors and obtained medical opinions consonant with his alleged injuries and limitations, but he has opted not to provide the Court with any medical evidence. Stone's failure to provide the Court with competent medical evidence dooms his claims since plaintiffs in ADA cases have "the burden of establishing with medical evidence the existence of the alleged disability." *See Weigert v. Georgetown University,* 120 F.Supp.2d 1, 7 (D.D.C.2000). Stone tries to save his claim by submitting his own affidavit and deposition in lieu of a doctor's report, but this is to no avail. The Seventh Circuit has pointed out on numerous occasions that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *See McPhaul v. Board of Com'rs of Madison County,* 226 F.3d 558, 564 (7th Cir.2000) (quoting *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993)). Likewise, "a litigant may not [generally] rely on self-serving depositions to survive summary judgment." *See also Jones v. Merchants Nat. Bank & Trust Co.,* 42 F.3d 1054, 1057 (7th Cir.1994).

### Record of Impairment

Because Stone has not included any medical evidence to support his claim and has not argued that the Defendants regarded him as being disabled, the only way his claim can survive summary judgment is if he can establish a record of impairment. *See* 42 U.S.C. § 12102(2)(B). A plaintiff establishes a record of impairment by showing that he has "a history of, or has been misclassified as having, a mental or

---

**2.** Stone does not explain why he failed to include any reference to these activities in his memorandum. Ordinarily, a plaintiff who fails to allege claims in his complaint would be barred from asserting them during summary judgment. It is only because Stone's assertions about his ability to walk and sit have no bearing on the Defendants' motion that the Court considers his additional claims.

physical impairment that substantially limits one or more major life activities." *See* 29 C.F.R. § 1630.2(k).

As with the first theory of disability, a successful claimant under this theory must provide evidence beyond self-serving affidavits and depositions. He must, as the ADA regulations state, provide a *record* of impairment. Stone does not do this. He provides nothing but his own affidavit and deposition. This is not enough to survive summary judgment. *See McPhaul*, 226 F.3d at 564, *Slowiak*, 987 F.2d at 1295; *Jones*, 42 F.3d at 1057 (7th Cir.1994). Since Stone cannot establish the first element of his *prima facie* case, he cannot establish an ADA claim.

*Ergo*, Defendants' Motion for Summary Judgment is ALLOWED.